Okay, the next case is number 06-1121, Overstock.com incorporated against Furnace Brook, LLC. Mr. Barr. And please, the Court. My name is John Barr. I'm here for the appellant, Overstock.com, Inc. Your Honors, the question in this case is whether the traditional rule for personal jurisdiction will be applied to patent cases. The Court held in Red Wing's shoe that although cease and desist letters meet minimum contacts, that they do not meet the second prong of the due process inquiry about whether the         Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. plea and substantial justice. Thus, the Court has created a special presumption of unfairness for patent cases in the personal jurisdiction context. This Court has held that it is very rare for considerations of fair play and substantial justice to defeat the reasonableness of jurisdiction. The specific policy considerations that are unique that have been identified by the Court in Red Wing Shoe was the presumption that it would be unfair for a patentee to have to file suit to enforce its patent in a foreign jurisdiction, and thereby, you know, if they send a letter in a foreign jurisdiction, they might be held in a foreign jurisdiction. Don't we want to encourage these letters? We want people to be able to send letters so that we can, at an early stage, begin the negotiations that will lead to settlement, so parties can understand each other's positions and get together. Now, of course, if you push it too far and threaten suit, that's a D.J. action, but where it's just communication, why wouldn't that be a very healthy thing for the system? Well, that was, as you've rationalized, Judge Reiter, that was one of the key underpinnings for the Court using the Red Wing Shoe case, was the assumption that cease and desist letters were akin to requests for settlement, and that they would further settlement negotiations. However, since the Red Wing Shoe case was considered in 1998, there has been a kind of a sea change in the patent world, as I'm sure the Court is aware, and that is that there has now been a substantial rise in the number of patents that have been filed. You're asking for a different rule when the patentee is not itself a manufacturer? Is that what you're asking for? No, Judge Newman, we're not. In fact, we're asking that the same rule apply to all people. You're saying we should overrule all precedent and essentially change the long-arm rules, change the rules of personal jurisdiction in patent cases? Yes, Your Honor. We're asking that the Court overrule the Red Wing Shoe case, which we believe is a departure from the traditional rules of personal jurisdiction, similarly to the Supreme Court's recent decision in the eBay case, where the Court held that a separate rule for injunction cases that applied to patentees was not appropriate. We have the same situation here, where the Court just presumes that it is unfair for a patentee to litigate in a foreign forum, and therefore— But this panel can't do anything about that. You're acknowledging that Red Wing Shoe does bind us, and therefore, at least for this panel, we have no choice but to follow our law, right? It's true that a panel can't overrule another panel, as I understand it. What we request is that the Court refer it to the consideration by the full court on bond, so that the case could be overruled, and that these— So how would you change the law? One of the things that's discussed in the briefs, and that the trial judge said, is how about IBM, that may have patents that it's not using, that it offers for license? You're saying that that, too, would subject it to jurisdiction wherever it offers the license? Well, as the Court's aware, there's a very specific inquiry that needs to be looked at in all due process cases, and what we're suggesting is that the inquiry for IBM would be the same as the inquiry for an alleged infringer. So there would always be an inquiry as to what? There would always be an inquiry whether or not there were minimum contacts, and whether or not it would be fair, under the circumstances of that particular case, to bring a party into court. What makes it unfair in this case? In this particular case? Yeah. Well, in the particular case of Furnace Brook, we don't believe it is unfair. We believe that Furnace Brook should have been brought into Utah. Yeah, but I should have stated the question otherwise, but please address why you think it's fair. Okay. We think that it would be fair in this particular case, because you'll recall that Furnace Brook is one of these companies that owns a patent but does not practice it. They have one employee. They are overstocked, which has many, many employees, is based in Utah. As far as saying you would draw a distinction in fairness as to whether or not the patentee is itself manufacturing? We would not, as a general rule, do that. If it's big or small? If they only have one or two employees? Is that the distinction? What's the distinction? Well, I don't think there should be a distinction. I was addressing your specific question about Furnace Brook. I don't think there should be a distinction between companies by the size or anything. There should be the same rule for personal jurisdiction applied to everyone. There should not be a separate presumption of patent. That's the way it is now. According to Red Wing Shoot, the same rule applies. Well, as the court recognized in Silent Drive, that's not exactly true. In Silent Drive, this court recognized that there are unique policy reasons that relate to patents only, and those are the reasons that arise to the presumption that it would be unfair to bring a patentee into a foreign jurisdiction. That presumption doesn't apply in other types of cases. I don't know that there's any presumption. I think that Red Wing Shoot simply says that a defendant may not be subjected to personal jurisdiction solely if the only thing they've done is send a letter in there. I mean, that's a pretty minimal sort of statement to make, isn't it? I think the court went farther than that in Red Wing Shoot. I think the court did go so far as to say that it would be unfair for patentees to be brought into foreign jurisdictions by writing cease and desist letters and even by sending demands for license agreements. And some of the other cases have drawn distinctions about whether or not— Assuming, just a second, again back to the specifics, if all they've done is send in a letter, you're saying under some circumstance, somebody can be enough of a, let's go back to your brief, patent troll, that a letter alone puts them in jurisdiction? I would not draw the distinction against a patent troll or not a patent troll. That's what your brief does. Well, our brief discusses that, and our brief does discuss the fact that the patent trolls kind of have changed the landscape. But our brief also discusses that there shouldn't be a different rule for personal jurisdiction for parties based on their status. And in this case, I think, in fact— Are you arguing that there should be a, that if a party is sent in a single letter and they happen to be, have one employee, and they happen to be a patent troll as you perceive them to be, that's enough for jurisdiction? I don't think you could have a blanket rule like that. I think that the rule that should be applied is the typical due process analysis that the U.S. Supreme Court has set forth many factors to be looked at in that analysis. What have they done in this case beyond sending letters in? Well, in this case, Farnes-Brooks sent letters, made phone calls, also sent a demand to license the patent. These are letters, yes. They're communications. They're communications. They were purposely— From long distance. And importantly, the declaratory judgment action that Overstock filed arose directly out of these letters. If there's a blanket rule that's applied to patent trolls, as we've termed it, or a blanket rule applied to any patentee in a personal jurisdiction situation that is going to presume unfairness, that rule is— it is not properly considered under the traditional fair play and substantial justice and under the traditional due process analysis. The same—there should be a level playing field between all parties, whether they be a patentee or whether they be the accused infringer. And what is unlevel again? That's where I'm still having the trouble. What's unlevel is it was recognized by the court in the Silent Drive case that there are—the quote was, policy considerations unique to the patent context is the reason that the second prong is not satisfied. So there is a separate rule that has been put in place for patent cases that does not apply— What's that rule? Well, that rule is that it is presumed to be unreasonable for a patentee to be dragged into court— Well, it is presumed. The law does not exclude discretion, does it, on the part of the trial court to say that this goes so far that it does, in fact, cross some kind of barrier and that the court in its discretion will permit the case to go forward. The court does not exclude that— the consideration of other factors. However, there's clearly a presumption that's been put in place of unreasonableness, which is contrary— Well, there are always presumptions. There are always burdens when you talk about overcoming presumptions. But you didn't object to a letter. You said a letter is not going to create a presumption the other direction, either. I don't think you can make a blanket rule and just say a letter is good enough or not. I think you need to look at each case and see what has been done— And that's what our law allows, isn't it? Not in this situation. What the law has done here is they've made a presumption for patent cases, which changes the burden of proof. You're saying an irrebuttable presumption? It's not an irrebuttable presumption. However, there's a presumption which is not justified by the due process analysis. Really, the burden of proof is on the party who's trying to escape the exercise of jurisdiction once minimum context has been shown. One final question before time goes away. What's a patent troll? A patent troll, as I've read in the articles, is a company who— Well, you used it many times. They counted how many times. So, not what you read in the articles. What is a patent troll? A patent troll would be a company that buys a patent, does not practice the patent, often purchases a patent in some type of a sale or bargain basement situation— So you would exclude the inventor himself? Has to be someone who buys a patent? Not for the purposes of this rule. For the purposes of the rule— For the purposes of the definition— You're still defining IBM in the category, by the way. Well, I'm running into my— I'd want to sit down, too, but— It's a pretty tough question. It is a tough question, but that's precisely why there shouldn't be a different rule for patent cases. There isn't a different rule. They said you used this pejorative term, I forget, 30— In this particular instance, what we have is— It's a company that buys a patent and applies that patent— So it's not an inventor? You're excluding the inventor? It is a company whose business model is litigation. Their business is not practicing the patent. The business is litigation. And what they do is write demand letters, and they make demands to extort license fees, and it's for litigation. And that's what patent trolls do. So you exclude Texas Instruments? I don't think Texas Instruments' business is litigation. I think Texas Instruments— Certainly, every licensing situation is not going to be shifted into the patent troll— But if a patent is property, as the statute itself says, it has the attributes of property, why can't it be bought and sold? Why can't it be licensed and unlicensed? Why can't it be used as property is used? It can be used as property is used. Then all your definitions of patent troll just disappeared. No. Property can also be wrongfully used. And if a patent does not apply to what accused infringers are doing, and it's being just spread by hundreds of letters just go out automatically to every company that's doing business over the internet, and they accuse you of infringement without any type of reasonable looking at what you're doing or anything of that nature, and they can do that behind a jurisdictional shield, which is what's been created by the Red Wing Chu case, that gives the patent holder an unfair advantage that shouldn't apply. Okay. Thank you, Mr. Barr. Mr. Vogt. May it please the Court. The District Court in this matter properly applied this Court's precedent in Red Wing Chu and Hildebrand in this instance. It looked at the contacts Ernest Brooke has had with Utah and found that they consisted of only communications notifying overstock of infringement coupled with an offer to license. Since 1998, this Court has said that those types of communications, without more, do not give rise to personal jurisdiction. There have been no other communications or activities between Ernest Brooke and the forum in this instance. Is that erecting a kind of a shield behind which these patent entrepreneurs can operate? Absolutely not, Your Honor. Ernest Brooke could be subject to a declaratory judgment action in the form of which it does exist. If they step one step over the line, they're in Utah, in other words. If at any point they make you apprehensive of suit, they are in Utah. That's what overstock would find. And actually, the reality of the situation is there's a lawsuit right now in New York where these matters are being litigated. There's been no hiding whatsoever. Recognizing that this Court has well-established precedent in Red Wing and in Hildebrand, as the Honors pointed out, overstock wants to make a new definition and carve out an exception and somehow discriminate against one patentee versus another patentee as to how Red Wing will apply. And as counsel pointed out, Red Wing spoke in the terms of patentee. And patentee has a special definition in patent law under the Patent Code. At 35 U.S.C. Section 100D a patentee is defined as the word patentee includes not only the patentee to whom the patent was issued but also the successor and title to the patent. Ernest Brooke is a patentee just like every other entity that acquires title to a patent. And this Court's opinions have discussed in terms of the when personal jurisdiction would be required. Do you have any trouble with the concept that there would be a stage at which a certain minimum contact requirement would be met based on the extent of interaction between the patentee and the intended licensee? Is that, Your Honor, based upon the number of communications? Well, perhaps the number, the extent. I'm not giving that thought, Your Honor, because in this instance we've only had a handful, I think six letters and a couple phone calls and that was it. And it certainly is within the... At what point, though, do these letters become clear evidence that you've submitted yourself to the jurisdiction of that particular  There's been no... What point do they become harassment and rise to the level of invoking even the legal processes of that jurisdiction? There's been no case law or guidance given on that, but again the focus is on I think maybe implicit in Your Honor's question is can there be some relief from those letters, and certainly there can be relief in proper forms where there's proper contacts or jurisdiction, personal jurisdiction. I don't think the quantity of the relief had in these circumstances is just determining where that relief should be best, and the law makes clear that it has to be in specific instances where there's something more than simple communications in some form. And lastly, as Your Honor's pointed out, there's an element of fairness to this and predictability, and the first book has relied on this Court's precedent since 1998, which has repeatedly said cease and desist letters coupled with the offer to license cannot form a basis of personal jurisdiction. We're all avoiding the potential problem here, and that is that it costs more to fight these things than to settle them, and so somebody offers a license for $50,000 and you recognize that to hire counsel is going to already double that amount, so the easy way out is just to avoid the confrontation, take the license, and it becomes, isn't there a sense of in which the fairness standard ought to take that into consideration? Your Honor, I think it provides no degree  fact pattern. One of the tenets of due process as set forth in the statute allow individuals some level of predictability so they can structure their conduct to know what would subject them to personal jurisdiction and what would not. Sort of a slippery slope of factors that have to be weighed and mingled. Again, the whole focus on personal jurisdiction is contact with the forum, not business decisions that were made. But you're kind of ducking the question. You may be asserting an invalid patent, but it's going to cost them at least let's throw numbers out, at least half a million dollars to get into court and prove that you're invalid. You're asking for $50,000. Why isn't the economics of this situation creating kind of an unfair balance in favor of the parties seeking multiple licenses? I think the problem with Your Honor's question is that it's presuming that there is no avenue for redress, when there certainly is. It's just a question of what's the proper jurisdiction What's the avenue for redress? File a declaratory judgment action where the patentee would be found and is doing business. In this case, New York. I don't know how to otherwise it's a slippery slope and it gives you no predictability. And that's all I have to say. Thank you. Thank you, Mr. Vogt. Mr. Barr. Your Honor, Mr. Vogt mentioned declaratory judgments act. I'm glad he did, because that is an important tool, as the court recognized in Red Wing Shoe, for resolving these types of disputes. But a separate rule for patent cases that allows a patentee to not be sued in any jurisdiction other than where they are living, doing substantial business, frustrates that declaratory judgments rule. Before the declaratory judgments act, a party that was accused of infringement had really no choice. They just had to either change their business practices or take the risk they were going to get sued for willful infringement. Now the declaratory judgments act exists. It allows a party to file a case and to get the court to declare what the rights of the parties are. And a separate rule for patent cases frustrates that purpose. What the court has traditionally done is looked at, once reasonable contacts are established, the court looks at the defendant to provide the burden of proof to make a compelling case that some other consideration would render jurisdiction unfair. And if we look at the tests that have been set up, for example, in the Red Wing Shoe case, I think it's side of the Beverly Hills Fan, there are instances where the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they're clearly outweighed by the burden of subjecting the defendant to litigation within the forum. That is the rare case where that second prong should defeat jurisdiction. And that's not the situation you have here. Especially where you have a situation, as you mentioned, Judge Rader, where fairness should be taken into account looking at the demand. When someone demands $50,000, it's going to cost you more than $50,000 to even look at the case and to hire a lawyer. So it really does hold you up and put you at a disadvantage. And it is for those reasons that... Why can't you pool together with the other 500 people that are supposedly receiving these letters and put up a little defense fund, everybody puts $20,000 in, and you've suddenly got a war chest to go get them where they do business. That would be a good way to do it, assuming that you can get everyone to agree to put money in. Well, you're telling them it's less. You're going to get them to do it for $20,000 rather than $50,000. And we're going to get rid of them for once and for all. The fact that you may be able to cut your costs still doesn't provide a good justification for having a separate rule in patent cases than the traditional rule that would apply in personal jurisdiction cases. Patent cases should be viewed like all other cases for jurisdictional purposes. This would fulfill the intent of the companies which own but don't practice their patent for making unfounded threats of infringement behind a jurisdictional shield. Thank you, Mr. Gowdy. Mr. Vogt, the case is taken under submission. All rise.